**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JASON JAMES HARPER,         )
                                  )
         Petitioner,         )     Civil Action No. 17-929
                                  )     Magistrate Judge Maureen P. Kelly
            v.              )
                                  )
SUPERINTENDENT TREVOR WINGARD,  )
JOSH SHAPIRO, *the Attorney General of the*  )
*State of Pennsylvania,* and the DISTRICT  )
ATTORNEY OF ALLEGHENY COUNTY,    )
                                  )
         Respondents.      )

## OPINION AND ORDER

Jason James Harper ("Petitioner"), has filed this pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"), ECF No. 6, seeking to attack his state court convictions for, *inter alia*, Aggravated Assault and Carrying a Firearm without a License, in connection with his shooting of the victim in the course of an altercation in a bar.   Petitioner was sentenced to an aggregate sentence of 10 – 20 years.

For the reasons that follow, the Petition will be denied because none of the four grounds for relief merits the grant of federal habeas relief.  Furthermore, because jurists of reason would not find this disposition of the Petition debatable, a certificate of appealability will also be denied.

## I.  FACTUAL BACKGROUND

The Pennsylvania Superior Court, in its January 30, 2014 Memorandum adopted the trial court's opinion in disposing of the direct appeal, which opinion summarized the facts of the crimes as follows:

On the evening of May 31, 2011, at approximately 9:00 P.M., Jason James Harper (Appellant) was inside Pearl's Café, a bar located at the intersection of Sixteenth and McClure in the Homestead section of Allegheny County. (T.T. 227, 236, 247 – 248, 261, 265, 278). While in the bar Harper got into an argument with another patron. However, the bartender (James Miller) intervened and quelled the confrontation. (T.T. 62, 82– 83, 97–99, 105, 120–121). Harper proceeded toward the front door where Diego Walker was sitting on a stool next to the front door. (T.T. 56–58, 67, 85, 115). A very brief exchange of words occurred between Harper and Walker, and Harper left the bar. (T.T. 116–121). Harper's rental car was parked a half- block away from the bar. (T.T. 145–146, 313, 326).

Moments later, Harper reentered Pearl's and shot Walker once as he sat on the stool, and Harper immediately left the bar. (T.T. 64, 67, 69, 99–100, 112–115, 117–119, 122–123). The bullet passed through Walker's left leg and entered his right leg, shattering his left femur. (T.T. 112–115). Miller, who was behind the bar, triggered the silent-alarm and the police responded to the scene. (T. T. 64, 70, 101, 104). [5]

---

[5] The bar was equipped with video surveillance equipment that captured the series of events. The recording was admitted into evidence and viewed by the jury at the trial. (T.T. 54, 72).

Homestead police officer Matt Fusco arrived and found Walker on the floor with a gunshot wound to the leg. (T.T. 247–249). After making sure Walker was stable, officer Fusco broadcast for other units in the area to be on the look out for Harper. (T.T. 231, 249).

Homestead police officer Francis Keyes also responded to the scene and upon arriving came upon a crowd of people standing outside the bar. (T.T. 228–229, 233, 237, 245, 253– 254). Officer Keyes, who knew Harper, noticed that Harper was among the crowd, and that he was wearing a dark colored hat and a white collared shirt. (T.T. 229, 238–239, 242, 245). Officer Keyes entered Pearl's and saw Walker lying on the ground just inside the front entrance of the bar, moaning "he shot me; he shot me." (T.T. 230). After exiting Pearl's, Officer Keyes noticed that Harper was gone. (T.T. 230).

Homestead police officer James Wintruba received the infoiniation [sic] about the shooting at Pearl's and began to patrol the perimeter of the area. (T.T. 277–278, 280). Officer Wintniba [sic] heard over the radio that a "light-skinned black male wearing a long white shirt," had fled the area, and a few minutes later heard over the radio that Jason Harper was a possible suspect. (T.T. 280, 283). Officer

Wintruba knew Harper, and as he was traveling north on Maple Street Harper ran out of an alleyway at full speed directly in front of officer Wintniba's [sic] vehicle. (T.T. 285–286). Harper was wearing a hat, sunglasses, and a white shirt as earlier described and broadcast. (T.T. 285).

Harper ran to an apartment building located at 1510 Maple Street, and ran up the front steps of the building. He entered the apartment building as a male held the front door open for him. (T.T. 286). Officer Wintruba alerted the other officers at the scene and positioned himself in the rear of the apartment building. (T.T. 287). Office Vince Abate responded to Wintruba's location to provide assistance. (T.T. 289, 291– 292).

Once inside, Harper ran to his friend Jamie Petuss' apartment. (T.T. 268, 276). Harper went into her apartment, exited out the back door of the apartment, and hid in a vacant lot next to the building. (T.T. 268–269).

However, from his position, officer Wintruba saw Harper crouching behind a hill in the vacant lot. (T.T. 288–289, 295, 298–299, 301). Officer Wintruba and Abate exited their vehicles and approached the area where Harper was attempting to conceal himself. (T.T. 292–293). Officer Wintruba yelled to Harper, "Jason, stop; Jason, stop; don't go anywhere," at which point Harper put his hands in the air. (T.T. 292–293, 302). Officer Wintruba and Abate took Harper into custody and Harper was wearing white Nike shoes, blue jean shorts, a belt, a white collared shirt, a black Pirates baseball cap, and a large silver watch. (T.T. 293–294, 298, 318–322). Harper was arrested and charged as noted hereinabove.

Com. v. Harper, No. 144 WDA 2013, 2014 WL 10988177, at *2 -3 (Pa. Super. Jan. 30, 2014) (some footnotes omitted); ECF No. 21-1 at 111 - 112 (adopting the trial court opinion as its own). See also Trial Court slip op., ECF No. 21-1 at 28 – 31.

## II. PROCEDURAL HISTORY

### A. State Court Procedural History

The Pennsylvania Superior Court, in its July 27, 2016 Memorandum addressing the appeal in the Post Conviction Relief Act ("PCRA") proceedings, summarized the state court procedural history as follows:

Harper was charged with one count each of aggravated assault, persons not to possess a firearm, and carrying a firearm without a license. Following a jury trial, Harper was found guilty of aggravated assault and carrying a firearm without a

license. Thereafter, the trial court sentenced him to a prison term of ten to twenty years.

This Court affirmed the judgment of sentence, after which the Pennsylvania Supreme Court denied Harper's Petition for Allowance of Appeal. *See Commonwealth v. Harper*, 96 A.3d 1096 (Pa. Super. 2014) (unpublished memorandum), *appeal denied*, 96 A.3d 1026 (Pa. 2014).

Harper, *pro se*, filed a timely PCRA Petition. The PCRA court appointed counsel, who filed an Amended Petition. Following a hearing, at which Harper's designated witness, Gary Lamont Butler ("Butler"), did not appear, the PCRA court dismissed the Petition. Harper filed a timely Notice of Appeal.

Com. v. Harper, 85 WDA 2016, 2016 WL 4745395, at *1 (Pa. Super. July 27, 2016); ECF No. 21-2 at 134 - 35.

After the Superior Court affirmed the denial of PCRA relief, Petitioner filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, ECF No. 21-2 at 140 – 166, which was denied on October 26, 2016.  Id. at 192.

### B. Federal Court Procedural History

Petitioner, proceeding pro se and in forma pauperis, filed the instant Petition in this Court.  ECF No. 6.  He raises four Grounds for Relief.

**GROUND ONE**: The evidence was insufficient as a matter of law to prove the crimes of Aggravated Assault and Firearms not to be carried without a license insofar as the victim testified that (Petitioner) was not the person who shot him proving "actual innocence."

ECF No. 6 at 5.

**GROUND TWO**:  Layered claims of ineffective assistance of counsel for failing to raise meritorious issues on my 1st PCRA and failing to secure the appearance of an exculpatory witness at evidentuary [sic] hearing.

Id. at 7.

**GROUND THREE**:  Ineffective Assistance of Trial Counsel - for failing to challenge Prosecutor's conduct during trial.

Id. at 8.

**GROUND FOUR:**  Newly discovered evidence in the form of an affidavit singed by eyewitness, Gary Butler, showing Petitioner[']s actual innocence.

Id. at 10.

After twice requesting and receiving extensions of time, Respondents filed their Answer, ECF No. 20, and a corrected Answer, docketed as an Errata, ECF No. 21, asserting that Petitioner was not entitled to relief.  Along with the Answer, Respondents filed copies of much of the state court record.  ECF Nos. 21-1; 21-2.  Respondents also caused the original state court records to be lodged with this Court.  Petitioner did not file a Traverse.

All parties have consented to the exercise of plenary jurisdiction by a United States Magistrate Judge.  ECF Nos. 12 and 16.

### III.  APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996.  Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case.  Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state court has reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue.  See 28 U.S.C. § 2254(d) and (e).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d). In <u>Williams</u>, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." <u>Id</u>. at 404-05 (emphasis deleted). A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Second, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case.

In addition, we look to the United States Supreme Court holdings under the AEDPA analysis as "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." <u>Rodriguez v. Miller</u>, 537 F.3d 102, 106–07 (2d Cir. 2008) (citing <u>Carey v. Musladin</u>, 549 U.S. 70 (2006)). The United States Court of Appeals for the Third Circuit has explained that "Circuit precedent cannot create or refine clearly established Supreme Court law, and lower federal courts 'may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct.'" <u>Dennis v. Sec., Pennsylvania Dept. of Corrections</u>, 834 F.3d 263, 368 (3d Cir. 2016) (en banc) (quoting, <u>Marshall v. Rodgers</u>, 569 U.S. 58, 64 (2013) (per curiam)). As the United States Supreme Court has further explained: "[s]ection 2254(d)(1) provides a

remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." White v. Woodall, 572 U.S. 415, 428 (2014).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Finally, it is a habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts. Moreno v. Ferguson, CV 17-1412, 2019 WL 4192459, at *3 (W.D. Pa. Sept. 4, 2019), appeal filed, 19-3777 (3d Cir. 12/6/2019). This burden means that Petitioner must point to specific caselaw decided by the United States Supreme Court and show how the state court decision was contrary to or an unreasonable application of such United States Supreme Court decisions. Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000) ("To obtain habeas relief, Mr. Owsley must therefore be able to point to a Supreme Court precedent that he thinks the Missouri state courts acted contrary to or unreasonably applied. We find that he has not met this burden in this appeal. Mr. Owsley's claims must be rejected because he cannot provide us with any Supreme Court opinion justifying his position."); West v. Foster, 2:07-CV-00021-KJD, 2010 WL 3636164, at *10 (D. Nev. Sept. 9, 2010) ("petitioner's burden under the AEDPA is to demonstrate that the decision of the Supreme Court of Nevada rejecting her claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*.' 28 U.S.C. § 2254(d)(1) (emphasis added). Petitioner has not even begun to shoulder this burden with citation to apposite United States Supreme Court authority."), aff'd, 454 F. App'x 630 (9th Cir. 2011).

The United States Court of Appeals for the Third Circuit has recognized the significance of the deference under AEDPA that federal habeas courts owe to state courts' decisions on the merits of federal legal claims raised by state prisoners in federal habeas proceedings and the Third Circuit emphasized how heavy is the burden that petitioners bear in federal habeas proceedings. The Third Circuit explained that: "[w]e also defer to state courts on issues of law: We must uphold their decisions of law unless they are 'contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' So on federal habeas, 'even 'clear error' will not suffice.' Instead, the state court must be wrong 'beyond any possibility for fairminded disagreement.'" Orie v. Sec. Pennsylvania Dept. of Corrections, 940 F. 3d 845, 850 (3d Cir. 2019) (citations and some internal quotations omitted).

## IV. DISCUSSION

### A. Ground One Does Not Merit Relief.

In Ground One, Petitioner asserts that there was insufficient evidence to convict him of his crimes. Specifically, Petitioner does not, as is typical in a sufficiency of the evidence challenge, argue that evidence was lacking to sustain any specific element of the crimes he was convicted of. Rather, Petitioner argues that there was insufficient evidence that he was the perpetrator of the crimes committed. However, Petitioner fails to carry his burden to show that the state courts' adjudication of this claim was contrary to or an unreasonable application of United States Supreme Court holdings or constituted a decision based on an unreasonable determination of the facts.

We begin by noting our proper standard of review of a question of sufficiency of the evidence under AEDPA. The United States Supreme Court has explained that:

We have made clear that *Jackson* claims [of insufficient evidence] face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) *(per curiam).* And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett,* 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

Coleman v. Johnson, 566 U.S. 650, 651 (2012). With the foregoing standard in mind, we conduct the following review.

Petitioner must show both that no rational trier of fact could have agreed with the jury and if he does so, he must then show that the state courts' rejection of his insufficiency of the evidence claim was objectively unreasonable. Saxton v. Sheets, 547 F.3d 597, 602 (6th Cir. 2008) ("When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis. First, we must ask whether the evidence itself was sufficient to convict under *Jackson.* The inquiry ends if we determine that there was sufficient evidence to convict Saxton. If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could have found Saxton guilty beyond a reasonable doubt. *Id.*").

In the instant case, the trial court, and by adoption, the Pennsylvania Superior Court addressed this claim of insufficient evidence regarding Petitioner being the perpetrator of these crimes as follows:

Appellant claims that the evidence was insufficient to convict him of Aggravated Assault and Carrying a Firearm without a License. This claim is without merit.

The applicable standard of review that applies to sufficiency claims has been stated thusly:

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when reviewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility, and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all the evidence introduced.

*Commonwealth v. Patterson,* 940 A.2d 493, 499 (Pa. Super. 2007) (citations omitted).

Here, Appellant does not otherwise dispute the lack of evidence as to the elements of any of the crimes charged, limiting his sufficiency argument to that of the identification of Appellant as the perpetrator of the crimes committed. In this regard the Superior Court has noted:

> A sufficiency of the evidence challenge is directed to the adequacy of the evidence as to the elements of the offenses, which a defendant has been convicted. Appellant, however does not direct his challenge to the individual elements, and essentially concedes that, if the Commonwealth's witnesses were credible, the Commonwealth's evidence was sufficient. The law is well settled that a sufficiency argument that is founded upon a mere disagreement with the credibility determinations made by the fact finder, or discrepancies in the accounts of the witnesses, does not warrant the grant of appellate relief, for it is within the province of the fact finder to determine the weight accorded to each witness'

testimony and to believe all, part, or none of the evidence introduced at trial.

*Commonwealth v. Johnson*, 910 A.2d 60, 65 (Pa. Super. 2006) (citations and quotations omitted).

Importantly, Pearl's was equipped with video surveillance technology, which captured the entire episode as it unfolded inside the bar. (T.T. 52). That recording was played for the jury and was powerfully incriminating evidence against Appellant. (T.T. 54, 72, Commonwealth Exhibit 5). It is well settled that the fact finder can draw its own conclusions by viewing a surveillance video. *See Commonwealth v. Childs*, 63 A.3d 323, 327 (Pa. Super. 2013) (video surveillance was sufficient evidence for the fact finder to identify defendant).

In addition to the video providing a basis for the jury to directly identify Harper, it also provided two strongly circumstantial bases for the identification, to wit: (1) upon being taken into custody it was noted that Harper's jean shorts had the sales tag attached to its front, and the video clearly depicted the same exact feature on the shooter's shorts; and (2) upon being taken into custody, Harper was wearing a particularly large wristwatch on his wrist, and the video clearly depicted a particularly large wristwatch on the shooter's same wrist. (T.T. 319, 322–323).

In addition to the video recording, the record also established that: (1) Harper got into a brief argument with Walker and exited Pearl's Café; (2) Harper's vehicle was parked nearby; (3) Harper reentered the bar and shot Walker; (4) Walker, although a reluctant witness who refused to identify Harper as the shooter, acknowledged that the person/ shooter from the video had the exact same clothing as Harper wore when apprehended; (5) officer Keyes saw Harper outside of Pearl's immediately after the shooting, wearing a white shirt and dark-colored baseball hat, and again at the police station after Harper's arrest wearing identical clothing; (6) officer Wintruba saw Harper run out in front of his vehicle wearing a hat, sunglasses, and a long white shirt, and immediately recognized Harper; (7) Harper ran into a nearby apartment building, remained only a few minutes before exiting the rear of the building and attempting to hide in an adjacent lot; and (8) at the time of his arrest, Harper was wearing blue jean shorts, a belt, a white collared shirt, a black Pirates baseball cap, two white Nike shoes, and a silver watch. (T.T. 118–19, 229–232, 285–286, 288, 293–295, 298, 301, 318–322). *See Commonwealth v. Monroe*, 422 A.2d 193, 195 (Pa. Super. 1980) (inconsistent statements by witnesses did not preclude the fact finder from evaluating the evidence sufficient to establish aggravated assault, possession of an instrument of

crime, possession of a concealed weapon, and carrying a firearm in public streets of Philadelphia).

Here, the combination of direct and circumstantial evidence clearly established defendant's culpability to the satisfaction of the fact finder and that verdict should not be disturbed. *See Commonwealth v. Orr*, 38 A.3d 868, 874–875 (Pa. Super. 2011) (notwithstanding the absence of incourt identification, the fact finder's review of the entire record properly sustained defendant's conviction). *See also Commonwealth v. Payne*, 868 A.2d 1257, 1260 (Pa. Super. 2005) (evidence sufficient to establish aggravated assault and firearms not to be carried without a license where the Commonwealth presented direct evidence that defendant approached victim with two guns drawn and that it only took an "inferential baby-step" to determine that defendant fired the shot that struck victim); *Commonwealth v. Young,* 692 A.2d 1112, 1113 (Pa. Super. 1997) (evidence was sufficient to establish both aggravated assault and carrying a firearm without a license, even though no weapon was recovered, through wholly circumstantial evidence).

Appellant's claim is without merit.

Com. v. Harper, 2014 WL 10988177, at *3 − 5 (footnotes omitted). See also Trial Court slip.

Op., ECF No. 21-1 at 31 - 35.

Petitioner fails to establish either that there was insufficient evidence of his identity as the perpetrator or that the state courts acted contrary to United States Supreme Court precedent or acted unreasonably in rejecting his sufficiency of the evidence claim.

Petitioner fails to argue yet alone establish that the foregoing disposition of his claim of insufficient evidence by the state courts is contrary to or an unreasonable application of Supreme Court holdings or that any specific state court factual findings were unreasonable. Indeed, Petitioner fails to point to any specific United States Supreme Court precedent that the Superior Court's disposition of Ground One was contrary to or which the Superior Court unreasonably applied. Owsley v. Bowersox, 234 F.3d at 1057; Ross v. Atty. Gen. of State of Pennsylvania, Civ. A. No. 07-97, 2008 WL 203361, at *5 (W.D. Pa. Jan. 23, 2008); West v. Foster, 2010 WL

3636164, at *10. Petitioner also fails to point out which facts found by the state courts constituted an unreasonable determination of the facts. <u>Moreno v. Ferguson</u>, CV 17-1412, 2019 WL 4192459, at *7 (W.D. Pa. Sept. 4, 2019) ("Accordingly, we find that Petitioner fails to carry his burden to show entitlement to relief under 28 U.S.C. § 2254(d)(2) for two independent reasons. First, he fails to point to a specific factual finding made by the state courts which was an unreasonable determination. Second, Petitioner has pointed to no specific evidence, yet alone clear and convincing evidence, which the state courts found credible, to rebut any specific state court factual finding."). Accordingly, Petitioner fails to show entitlement to federal habeas relief as to Ground One.

Petitioner also fails to show insufficient evidence as to him being the perpetrator. In the "supporting facts" section of Ground One in the Petition, ECF No. 6 at 5, Petitioner lists seven facts which he implicitly contends undermines the sufficiency of the evidence of him being the perpetrator. But, at most, what he establishes by pointing to these facts is that there is evidence supporting a conclusion contrary to the conclusion that the jury reached. But, merely pointing to contrary evidence is not sufficient to meet his burden on an insufficiency of the evidence claim. <u>McClendon v. Singh</u>, C 09-0647 MMC PR, 2013 WL 669748, at *10 (N.D. Cal. Feb. 25, 2013) ("Petitioner's argument does no more than point to a conflict in the evidence that the jury was entitled to decide, which evidentiary dispute is insufficient to establish the knowing use of false evidence."). Petitioner must show that there is no evidence that would support a rational juror finding he was the perpetrator. He has failed to do so as the recitation of the facts by the state courts well demonstrates.

Accordingly, Ground One fails to merit federal habeas relief.

**B. Ground Two Does Not Merit Relief.**

In Ground Two, Petitioner raises a claim that his PCRA counsel was ineffective. Specifically, Petitioner claims that his PCRA counsel was ineffective "for failing to raise meritorious issues on my 1ˢᵗ PCRA, and failing to secure the appearance of exculpatory witness at evidentuary [sic] hearing." ECF No. 6 at 7.

Unfortunately for Petitioner, a claim of ineffective assistance of PCRA counsel cannot provide a basis for federal habeas relief. The Honorable Terrence McVerry explained this fundamental principle of law as follows:

> Petitioner's final issue is that his "First Post-Conviction Relief Act Appointed Counsel was ineffective For Not Raising Appellate Counsel's Ineffectiveness...." Doc. 12. It does not matter for the purposes of deciding this issue whether PCRA counsel was ineffective, although it is doubtful that he was. This is so because, even if we assumed PCRA counsel was ineffective, the ineffectiveness of PCRA counsel simply does not provide a ground for relief in federal habeas proceedings, as such ineffectiveness implicates no federal constitutional right given that Petitioner had no federal constitutional right to counsel at that stage in the proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") (citations omitted). Neither is there a substantive due process or equal protection right to counsel in state post conviction proceedings. *Jacobs v. McDaniel*, 139 F.3d 905 (Table); 1998 WL 78440, at *1 (9th Cir. 1998) ("Jacobs' claim that he was denied due process because the state habeas court refused to appoint counsel at the evidentiary hearing fails for lack of a right to counsel in state collateral proceedings."); *Gibson v. Public Advocacy Dept.*, 35 F.3d 565 (Table), 1994 WL 462160 at *2 (6th Cir. 1994)("Similarly, neither the Due Process Clause of the Fourteenth Amendment nor the equal protection guarantee of 'meaningful access' to the courts requires the defendants to appoint counsel for Gibson [in state post conviction proceedings]. *See Murray v. Giarratano*, 492 U.S. 1, 7 (1989). Thus, it is beyond a doubt that Gibson has no federal constitutional right to counsel...."); *Pursell v. Horn*, 187 F.Supp.2d 260, 373 (W.D. Pa. 2002) (holding in a death penalty case that "the due process clause does not require counsel for state post-conviction proceedings, whether state law requires such counsel or not."). Accordingly, this issue does not merit relief.

Louder v. Patrick, CIV.A.06-617, 2007 WL 1576399, at *11 (W.D. Pa. May 31, 2007). Accord Belch v. Masurkiewicz, 11CV1189, 2014 WL 3565953, at *5 (W.D. Pa. July 18, 2014) ("However, as expressly addressed in 28 U.S.C. § 2254(i), Petitioner's claim of ineffectiveness of PCRA counsel cannot serve as a ground for relief: 'The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.' 28 U.S.C. § 2254(i). Moreover, even if there were no statutory bar to granting relief for a claim of ineffective assistance of PCRA counsel, Petitioner is still precluded from making this claim because no federal right to counsel exists at the PCRA stage, and, therefore, a state prisoner cannot claim a violation of a federal right due to the ineffective assistance of counsel at that stage…. Because Petitioner did not possess a federal right to counsel during his state post-conviction proceeding, *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), he cannot receive habeas relief on a claim that PCRA counsel was ineffective.").

Accordingly, Ground Two does not afford Petitioner federal habeas relief.

**C.  Ground Three Does Not Merit Relief.**

In Ground Three, Petitioner asserts claims that his trial counsel was ineffective for "failing to challenge the prosecutor's conduct during trial." ECF No. 6 at 8. Petitioner lists five matters that he contends defense counsel failed to challenge at trial. Id.

Respondents point out that Petitioner never raised these claims on appeal to the Superior Court in the PCRA proceedings, and, therefore, they are procedurally defaulted. ECF No. 21 at 29. Respondents also note that Petitioner claims in the Petition that he did not properly exhaust these claims of trial counsel's alleged ineffectiveness because "PCRA counsel unstrategically abandoned these issues." ECF No. 6 at 9.

Petitioner does not deny that he has procedurally defaulted these claims of trial counsel's ineffectiveness but we construe his explanation for the default of these claims, i.e., his PCRA counsel's alleged ineffectiveness as invoking the so-called Martinez exception pursuant to Martinez v. Ryan, 566 U.S. 1 (2012).

As this Court has previously explained:

> The decision of the United States Supreme Court in Martinez v. Ryan created a sea change in the doctrine of procedural default, holding for the first time that a claim of ineffective assistance of post-conviction relief counsel could serve as cause to excuse the procedural default of a claim of trial counsel's ineffectiveness. However, the Supreme Court in *Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013) explained that Martinez only permits a federal habeas court to find "cause" based on post conviction counsel's ineffectiveness and "thereby excus[e] a defendant's procedural default, where (1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and (4) state law requires that an 'ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

Taylor v. Pa., CIV. A. 15-1532, 2018 WL 446669, at *9 (W.D. Pa. Jan. 16, 2018).

Under Martinez, Petitioner bears the burden of establishing the ineffectiveness of PCRA trial counsel in order to seek to excuse the procedural default of a claim of trial counsel's ineffectiveness.[1] The standard for determining whether PCRA trial counsel was ineffective or not is the normal Strickland standard of deficient performance coupled with prejudice. Workman v. Superintendent Albion SCI, 915 F.3d 928, 2019 WL 545563, at *4 - 5 (3d Cir. Feb.

---

[1] The fact that Martinez permitted a finding of "cause" in the form of PCRA counsel's ineffectiveness to excuse a procedural default did not change the law that the ineffectiveness of PCRA counsel, per se, cannot serve as an independent ground for directly granting federal habeas relief. Belch v. Masurkiewicz, 2014 WL 3565953, at *5 n.8 ("*Martinez* does not provide that claims of ineffective assistance of PCRA counsel can serve as grounds for relief from a state court conviction in federal habeas proceedings.").

12, 2019); <u>Preston v. Superintendent Graterford SCI</u>, 902 F.3d 365, 376-77 (3d Cir. 2018).

Under this standard, we note that there is no one correct way to represent a client and counsel

must have latitude to make tactical decisions. <u>Lewis v. Mazurkiewicz</u>, 915 F.2d at 115. <u>See also</u>

<u>Kauffman</u>, 109 F.3d at 190 ("[i]t is [] only the rare claim of ineffective assistance of counsel that

should succeed under the properly deferential standard to be applied in scrutinizing counsel's

performance."). All of the normal rules of ineffectiveness apply under <u>Martinez</u>, when

evaluating a claim of PCRA counsel's alleged ineffectiveness which is asserted as cause to

excuse the procedural default of a claim of ineffectiveness by trial counsel, <u>i.e.</u>, PCRA counsel is

presumed effective and it is Petitioner's burden to prove otherwise. <u>See</u>, <u>e.g.</u>, <u>Murray v.</u>

<u>Diguglielmo</u>, CV 09-4960, 2016 WL 3476255, at *5 (E.D. Pa. June 27, 2016). The District Court

in <u>Murray</u>, succinctly stated the applicable rules:

> In assessing the effectiveness of PCRA Counsel, the Court is "required to ... assume" that PCRA Counsel "made an informed judgment call that was counsel's to make" "unless the petitioner has come forward with evidence to the contrary sufficiently probative to overcome the 'strong presumption' required by Strickland." *Sistrunk v. Vaughn*, 96 F.3d 666, 671 (3d Cir. 1996). "Th[e] process of 'winnowing out weaker arguments on appeal and focusing on' those most likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)); s*ee also Tok v. Glunt,* 2016 WL 721280, at *5 (E.D. Pa. 2016) ("PCRA counsel, acting as an appellate attorney, was entitled to select those issues on collateral review that he thought most likely to succeed on behalf of his client."). Thus, the Court must presume that PCRA Counsel withdrew this claim "for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

<u>Id.</u>

**1. Petitioner fails to show deficient performance of his PCRA counsel.**

In the instant Petition, Petitioner fails to satisfy the first prong of ineffectiveness, i.e., that his PCRA counsel engaged in deficient performance. Petitioner fails to even argue, yet alone, convince the Court that the single issue which his PCRA trial counsel did raise in the counseled PCRA Petition, was any less strong than the issues that Petitioner contends his PCRA trial counsel should have raised but did not. While Petitioner in a conclusory fashion, of a single sentence, states that his PCRA counsel "unstrategically abandoned these issues," he offers no argument in support of such a conclusory assertion. In fact, it is Petitioner's failure to make such an argument that necessarily results in Petitioner's failure to carry his burden to rebut the presumption of effective assistance of counsel and to show deficient performance on the part of his PCRA trial counsel in the initial PCRA petition proceedings. In this regard, we note that his PCRA counsel raised the new evidence claim of the so-called "affidavit" of Gary Butler which asserted that Petitioner was not the shooter.

On this record, Petitioner fails to show deficient performance on the part of PCRA trial counsel.

**2. Petitioner fails to show prejudice from PCRA counsel's ineffectiveness.**

In addition, Petitioner fails to argue, yet alone establish, how he was prejudiced by PCRA trial counsel's actions in choosing the issue he chose and foregoing the ineffective assistance of trial counsel claims now raised by Petitioner herein. Petitioner has failed to show that the claims of trial counsel's alleged ineffectiveness raised in Ground Three were substantial claims within the contemplation of <u>Martinez</u>. <u>Bundy v. Garman</u>, CIV.A. No. 17-3308, 2019 WL 1811007, at *15 (E.D. Pa. Feb. 26, 2019) ("The *Martinez* analysis requires the federal court to determine whether PCRA counsel was ineffective utilizing the familiar *Strickland* analysis, but evaluating

prejudice by determining whether the underlying claim of ineffectiveness of trial counsel was 'substantial' utilizing the standard for granting a certificate of appealability."), *report and recommendation adopted*, 2019 WL 1787647 (E.D. Pa. Apr. 24, 2019).

Given the evidence of the video tape and the corroborating evidence that Petitioner, shortly after the shooting at the time of his arrest, was in the same clothing and wearing the same watch as was depicted in the video tape of the shooter, Petitioner simply cannot demonstrate a substantial question of prejudice resulting from any of his trial counsel's alleged deficient actions or inactions.

 Accordingly, Ground Three does not merit federal habeas relief.

**D.  Ground Four Does Not Merit Relief.**

In Ground Four, Petitioner claims that he has new evidence of his actual innocence of the crime. ("Newly discovered evidence in the form of an affidavit signed by eyewitness, Gary Butler, showing Petitioner[']s <u>actual</u> <u>innocence</u>[.]") ECF No. 6 at 10.

Unfortunately for Petitioner, a free-standing claim of actual innocence, outside of the capital punishment context, is not a cognizable claim in federal habeas corpus proceedings.

**1.  A stand-alone claim of innocence is not cognizable under Section 2254.**

A stand-alone claim of actual innocence is not cognizable in federal habeas proceedings in a non-capital case. <u>Albrecht v. Horn</u>, 485 F.3d 103, 121-22 (3d Cir. 2007) (citing <u>Herrera v. Collins</u>, 506 U.S. 390 (1993)). <u>See</u> <u>also</u> <u>Burns v. Atty. Gen. of the State of Pennsylvania</u>, CV 14-300 ERIE, 2016 WL 128212, at *8 (W.D. Pa. Jan. 12, 2016) ("Petitioner raised his recantation claim in his PCRA proceeding under a provision of the state statute that is meant to address claims of actual innocence based upon newly-discovered evidence. 42 PA.CONS.STAT.ANN. § 9543(a)(2)(vi). This provision of the PCRA does not have a comparable counterpart in the

federal habeas statute. *See, e.g., Albrecht*, 485 F.3d at 122-23. Petitioner claims that S.B.'s recantation demonstrates that he is actually innocent. As discussed above, a stand-alone actual innocence claim is not cognizable in a federal habeas action. Thus, while the PCRA provides for 'actual innocence' claims, the federal habeas statute requires in non-capital cases 'actual innocence plus a constitutional violation.' Id. at 122 (citing *Herrera*).").  Indeed, the United States Supreme Court has declared that "claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  <u>Herrera</u>, 506 U.S. at 400.  The reason for this was given in <u>Herrera</u>. In that case, the Supreme Court held that federal habeas review is not available "absent an independent constitutional violation occurring in the underlying state criminal proceeding," and that "a claim of 'actual innocence' is not itself a constitutional claim." <u>Id.</u> at 400, 404. The Supreme Court explained that once a defendant is found guilty after a fair trial in the state court, he no longer is entitled to a presumption of innocence, and thus comes before the federal habeas court not as one who is innocent, but as a convicted criminal. <u>Id.</u> at 399-400. Because such a determination in the state criminal trial is "a decisive and portentous event" and "[s]ociety's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the guilt or innocence of one of its citizens," freestanding claims of actual innocence are not reviewable in federal habeas actions. <u>Id.</u> at 401 (internal quotations and citations omitted). The Supreme Court noted that "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." <u>Id.</u> at 400. "Federal courts are not forums in which to relitigate state trials." <u>Id.</u> at 401 (quotations and citation omitted). Thus, the Court rejected Herrera's claim that, even if the proceedings that resulted in

his conviction and sentence were entirely fair and error free, his innocence would justify the grant of federal habeas relief.

Based upon the Herrera decision, the United States Court of Appeals for the Third Circuit has held that in non-capital cases such as this case: "It has long been recognized that '[c]laims of actual innocence based on newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'" Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004) (quoting Herrera, 506 U.S. at 400);[2] Albrecht, 485 F.3d at 121-22. For this reason, to the extent that Petitioner is now making a stand-alone claim of actual innocence, it will be denied because it is not cognizable under the federal habeas corpus statute. See also In re Swearingen, 556 F.3d 344, 348 (5th Cir. 2009) ("The Fifth Circuit does not recognize freestanding claims of actual innocence on federal habeas review."); Cress v. Palmer, 484 F.3d 844, 854 (6th Cir. 2007) (freestanding innocence claim based on newly discovered evidence is not cognizable in non-capital case under § 2254); Johnson v. Bett, 349 F.3d 1030, 1038 (7th Cir. 2003) ("For claims based on newly discovered evidence to state a ground for federal habeas relief, they must relate

_____

[2] But see Sistrunk v. Rozum, 674 F.3d 181, 187 (3d Cir. 2012) (in a non-capital case the Court of Appeals stated: "we need not address whether a freestanding claim of actual innocence would be cognizable on federal habeas review because that is not all that Sistrunk's petition offers."). The statement in Sistrunk could be read to mean that whether a freestanding claim of actual innocence is cognizable remains an open question in this Circuit. It appears however that the United States Court of Appeals for the Third Circuit has already held in a published opinion that such a free standing claim is not cognizable. See Fielder, 379 F.3d at 122 ("By contrast, Fielder's after-discovered evidence claim is timely under § 2244(d)(1)(D). Nevertheless, we can affirm the decision of the District Court on the alternative ground that this claim is not cognizable under the federal habeas statute because it rests on state, rather than federal, law. It has long been recognized that '[c]laims of actual innocence based on newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.' Herrera v. Collins, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Therefore, Fielder's after-discovered evidence claim was properly dismissed by the District Court."). We note that Sistrunk did not mention Fielder. As a District Court, we are bound by the holding in Fielder.

to a constitutional violation independent of any claim of innocence."); Rouse v. Lee, 339 F.3d 238, 255 (4th Cir. 2003) ("[C]laims of actual innocence are not grounds for habeas relief even in a capital case...."); David v. Hall, 318 F.3d 343, 347-48 (1st Cir. 2003) ("The actual innocence rubric... has been firmly disallowed by the Supreme Court as an independent ground of habeas relief, save (possibly) in extraordinary circumstances in a capital case."); Burton v. Dormire, 295 F.3d 839, 848 (8th Cir. 2002) ("[W]e have squarely rejected the notion that a prisoner may receive a writ simply because he claims he is innocent."); LaFevers v. Gibson, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001) ("[A]n assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus.").

Consistent with the judicial decisions discussed herein, we find that Petitioner's stand-alone claim of actual innocence is not cognizable. Accordingly, this claim does not merit federal habeas relief.

### 2. Even if cognizable, Petitioner fails to establish his actual innocence.

In the alternative, even if a freestanding claim were cognizable, Petitioner's "affidavit" from Gary Butler, [3] falls woefully short of meeting the extraordinarily high standards required for establishing actual innocence under Herrera. This is because while the statement by Gary Butler that Petitioner was not the shooter may be new, the evidence that Petitioner was not the shooter is definitely not new. As the Superior Court observed:

> Here, Butler provided an affidavit explaining that he was at the bar on the evening
> of the incident, saw the shooter, the shooter was not Harper, and that the police

---

[3] Petitioner attached a copy of the so-called "affidavit" of Gary Butler as an exhibit to the Petition. ECF No. 6-1 at 1 – 2. The exhibit does not qualify as an "affidavit" given that it was not made under penalty of perjury or sworn to in the presence of a notary.

never questioned him. See Affidavit, 11/24/14. However, Miller and another bar employee testified at trial that they did not know if Harper was the shooter. N.T., 9/25/12, at 71, 95, 104. Further, Walker testified that, while he could not definitively identify the shooter, he knew it was not Harper. N.T., 9/25/12, at 127. Thus, Butler's affidavit was merely corroborative to evidence presented at trial. *See Padillas*, 997 A.2d at 363.

Com. v. Harper, 2016 WL 4745395, at *2; ECF No. 21-2 at 137.

Moreover, even if the evidence could be considered "new" it simply is not of the quality and character required under Herrera.  It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt; the test is even more substantial than that. In *Schlup*, the Supreme Court reiterated that "[t]he meaning of actual innocence as formulated by *Sawyer* and *Carrier* does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."

Schlup v. Delo, 513 U.S. 298, 329 (1995).  Furthermore,

> Because "'actual innocence' means factual innocence, not mere legal insufficiency," the Government "is not limited to the existing record to rebut any showing that [the] petitioner may make." *Bousley*, 523 U.S. at 623-24, 118 S.Ct. 1604. A habeas court is therefore "not bound by the rules of admissibility that would govern at trial," but must instead "make its determination 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.' " *Schlup*, 513 U.S. at 327-28, 115 S.Ct. 851 (quoting Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 160 (1970)).

Bruce v. Warden Lewisburg USP, 868 F.3d 170, 184 (3d Cir. 2017).

In light of the fact that the jury had already heard evidence at his trial  that Petitioner was not the shooter but chose to reject such evidence in light of the video taped evidence and considering that the author of the "affidavit" was unwilling to come to court and testify under oath, suggesting a certain unreliability of the proposed evidence from Gary Butler, we find that

Petitioner's "new evidence" fails to establish that "no reasonable juror would have found the defendant guilty." Accordingly, Ground Four does not merit federal habeas relief.

## V. CERTIFICATE OF APPEALABILITY

A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). The Court concludes that jurists of reason would not find it debatable whether the Petitioner made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability will be denied.**VI. CONCLUSION**

**AND NOW,** this 31st of March, 2020, it is hereby **ORDERED** that for the reasons set forth herein, the Petition is **DENIED**. Because we conclude that jurists of reason would not find the foregoing debatable, a certificate of appealability is likewise **DENIED**.

BY THE COURT,

*/s/ Maureen P. Kelly*
MAUREEN P. KELLY
UNITED STATE MAGISTRATE JUDGE

cc:    JASON JAMES HARPER
LG-2689
SCI Somerset
1600 Walters Mill Road
Somerset, PA 1551

All counsel of record via CM-ECF